IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KURT MILES, ) | |
| Plaintiff, ) | |
| v. ) | Case No.: 1:18-cv-00014 |
| COURTYARD HEALTHCARE CENTER, ) LLC, an Illinois Limited Liability Company ) | **Plaintiffs Demand Trial by Jury** |
| Defendant. ) | |

## COMPLAINT

Plaintiff Kurt Miles ("Plaintiff"), by his attorneys, Jennifer M. Sender and Andrés J. Gallegos, of Robbins, Salomon & Patt, Ltd., for his Complaint against Defendant Courtyard Healthcare Center, LLC ("Defendant"), an Illinois limited liability company, states as follows:

### JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over Counts I and II of this action pursuant to 28 U.S.C. § 1331 as the Plaintiff's claims alleged herein arise under Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794, *et seq.*; and Section 1557 of the Patient Protection and Affordable Care Act ("Section 1557"), 42 U.S.C. 18116. This Court has supplemental jurisdiction over Counts III and IV of this action pursuant to 28 U.S.C. § 1367.

2. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b). Defendant resides in this district and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

1

## THE PARTIES

3. Plaintiff is a 57-year old male who is severely hard of hearing and has mild cerebral palsy. Plaintiff has a limited ability to verbalize speech and does not read lips. Plaintiff's primary language is American Sign Language ("ASL"). Plaintiff is a person with a disability within the meaning of all applicable statutes. Plaintiff resides in Cicero, Illinois. Plaintiff is allergic to aspirin and penicillin, and suffers from food allergies, namely from fish and eggs.

4. Defendant is an Illinois limited liability company, and a skilled nursing and intermediate care facility, that owns and operates a nursing and rehabilitation facility which it operates under the assumed name "Courtyard Healthcare Center" (the "Facility"), in Berwyn, Cook County, Illinois. The Facility offers and advertises its comprehensive spectrum of rehabilitative, cardiac care, in-center dialysis, respite and hospice care services.

## DEFENDANT'S CONDUCT

5. "Effective communication" is critical in virtually all medical contexts, particularly in a rehabilitation center. Effective communication entails the ability to share critical healthcare information, the ability to ask questions relating to critical health information and the ability to understand what is being said. Without it, a caregiver cannot obtain complete medical histories; assess symptoms; provide for patient rights, including informed consent; develop accurate diagnoses and prognoses; develop, explain and administer procedures, medication and treatment generally; provide counseling; or otherwise ensure that residents' needs are appropriately met. Failure to ensure that deaf and hard of hearing patients can effectively communicate threatens the quality of care,

2

the patient's ability to participate in his own rehabilitation and, even when treatment ultimately is successful, violates legally protected rights.

6. Defendant failed to provide Plaintiff, a person who is severely hard of hearing, and therefore disabled, the same quality of care as other residents and deprived him of the opportunity to benefit from Defendant's services and participate in his care and rehabilitation on the basis of his disability. This unequal treatment occurred because, among other things, Defendant deliberately ignored Defendant's preference and request for ASL interpreters and instead relied upon the exchange of written notes or required Plaintiff to attempt to lip read during numerous complex, sufficiently lengthy and critical conversations.

7. In a nursing and rehabilitation facility, examples of circumstances when the communication may be sufficiently lengthy or complex so as to require an ASL interpreter for deaf or hard of hearing residents, include but are not limited to (collectively, "Vital Encounters"):

 A. When conducting a comprehensive assessment of a resident's needs, strengths, goals, life history and preferences;

 B. Developing and implementing the resident's patient-centered plan of care, including establishing expect goals and outcomes of care;

 C. Informing a resident of his or her rights to participate in his or her plan of care, rights and responsibilities;

 D. Discussing a resident's symptoms and medical condition, medications, and medical history;

 E. When conducting periodic assessments of a resident;

 F. Providing a diagnosis, prognosis, and recommendation for treatment;

 G. Communicating with a resident during treatment, including physical and occupational therapies, testing procedures, and during physician's rounds;

    H.     Obtaining informed consent for treatment and therapies;

    I.     Providing instructions for medications, post-treatment activities and follow-up, treatments;

    J.     Providing mental health services, including group or individual counseling for residents and family members;

    K.     Discussing powers of attorney, living wills and/or complex billing and insurance matters;

    L.     During educational presentations;

    M.     Discussing discharge planning and discharge instructions; and

    N.     When providing religious services and spiritual counseling.

8.     Defendant acted intentionally and with deliberate indifference when it failed to provide the benefit of its services, programs, and activities to Plaintiff and failed to provide appropriate auxiliary aids and services to Plaintiff to ensure effective communicate with him during all Vital Encounters.

9.     Defendant acted intentionally and with deliberate indifference when it failed to provide appropriate auxiliary aids and services to Plaintiff to allow for effective communication between him and the Defendant's doctors, nurses, counselors, social workers, therapists, and others (collectively, the "Facility's Personnel").

10.    Defendant denied Plaintiff full and equal access to its services and denied Plaintiff the equal opportunity to participate in his own healthcare and rehabilitation in violation of Section 504 and Section 1557 by:

    A.     Failing to provide adequate and effective auxiliary aids and services to facilitate communication with the Facility's Personnel;

    B.     Failing to adequately train the Facility's Personnel on the differences in methods of communication for simple and short conversations versus for Vital Encounters;

    C.     Failing to provide equal access to its programs and services; and

    D.    Failing to establish comprehensive policies and procedures to meet its legal mandates to achieve effective communications.

## PLAINTIFF'S EXPERIENCE

11. Plaintiff is severely hard of hearing since the age of 12 and has mild cerebral palsy. Plaintiff's primary language is ASL. He is unable to lip read. He has very limited residual hearing in both ears, as such, he cannot hear complete sentences and cannot follow along even simple sentences. Plaintiff can verbalize words, however, absent an ASL interpreter, he is not able to completely share information regarding his symptoms, needs, etc.; is not able to ask questions about his care, rehabilitation, diagnosis, prognosis, medication, etc.; and is not able to understand his rehabilitation or treatment options, diagnosis, prognosis, side effects of medication, financial obligations, etc. Exchanging written notes is ineffective for him for other than short and simple conversations as he is only able to comprehend a small percentage of what is written.

12. Plaintiff became a resident of the Facility on April 29, 2017, and remained at the Facility for 156 days, until October 2, 2017. He was transferred to the Facility primarily for surgical aftercare from a Cholecystectomy (gallbladder removal) at MacNeal Hospital. Upon being admitted to the Facility, he was diagnosed as having ataxic gait, cholecystitis, generalized abdominal pain, muscle weakness, coronary heart disease, other chronic pain and major depression.

13. On each day of the Plaintiff's 156 day stay at Defendant's Facility, Plaintiff wrote legibly on a small whiteboard, and showed it daily to Facility Personnel he encountered, that he needed an on-site ASL interpreter to communicate with Facility Personnel.

14. Despite being aware of Plaintiff's communication preference and needs, throughout Plaintiff's 156 day stay at the Facility, Plaintiff was required to exchange written notes or attempt to lip read with the Facility's Personnel during numerous Vital Encounters, including, *inter alia,* the following:

   A. During initial physical, nursing, social services, recreation, dietary assessments upon admission;

   B. During the development of Defendant's legally required patient-centered plan of care with its interdisciplinary team;

   C. During one-on-one periodic social services, nursing, dietary and recreation assessments;

   D. During approximately 2 one-on-one restorative nursing evaluations;

   E. During approximately 90 one-on-one nursing evaluations discussing Plaintiff's medical condition and symptoms; and explaining results of tests;

   F. When participating in approximately 9 nursing and social services counseling and educational presentations;

   G. During approximately 4 one-on-one physician evaluations providing diagnosis and/or recommendations for treatment;

   H. During approximately 20 one-on-one periodic assessments and evaluations with a social worker;

   I. During approximately 20 one-on-one occupational and physical therapy sessions; and

   J. During approximately 4 discharge planning conferences with social services personnel.

15. On a few occasions, Defendant offered one of its speech therapists, who purportedly has some knowledge of ASL but is not an Illinois licensed ASL interpreter, to interpret for the Plaintiff with the Facility's Personnel. Upon learning the speech therapist was not an Illinois licensed interpreter, Plaintiff declined to use her and insisted upon the use of a qualified licensed ASL interpreter. In those instances where Defendant

6

offered its speech therapist to interpret for Defendant, that was Defendant's only offer to Plaintiff of an interpreter throughout the entirety of his 156 day stay.

16. Throughout the 156 days that he stayed at the Facility, Plaintiff was denied the ability to participate in social and recreational activities and religious services due to the absence of appropriate auxiliary aids and services.

17. Plaintiff's allergy to eggs was documented in the Plaintiff's electronic (medical) records maintained by Defendant. Despite knowing that Plaintiff was allergic to eggs, on numerous occasions throughout Plaintiff's 156 days stay at the Facility, Defendant served Plaintiff eggs for breakfast over his objections, and in one instance, did so on consecutive mornings. Plaintiff could not fully communicate his objections with the food services staff because of the absence of appropriate auxiliary aids and services.

18. Plaintiff's electronic (medical) records maintained by Defendant identified Plaintiff as a fall risk. Notwithstanding Defendant's knowledge that Plaintiff was a fall risk, on May 23, 2017, Plaintiff understood he was instructed by one of Defendant's employees to shower. Given the absence of appropriate auxiliary aids and services, Plaintiff did not understand that he could not be in the shower by himself. However, Plaintiff was left alone to shower, where he fell, causing considerable pain to his right knee.

19. Defendant's refusal to provide Plaintiff with appropriate auxiliary aids and services severely delayed critical dental care services for him. Plaintiff developed severe gum pain while in the Facility, on or about May 3, 2017, and without the benefit of appropriate auxiliary aids and services, had difficulty communicating the severity of his pain. As a result, Plaintiff was mainly prescribed Orajel and Tylenol. Plaintiff continued

7

to complain about severe gum pain daily, and it was not until 15 days later, on May 18, 2017, that the Facility's Personnel scheduled an appointment for him at a local dental clinic. That appointment was scheduled for May 22, 2017. At that appointment he was diagnosed as having severe gum disease requiring multiple tooth extractions.

20. Defendant's denial to Plaintiff of appropriate auxiliary aids and services to ensure effective communication with the Facility's Personnel resulted in Plaintiff's inability to understand his rights to understand his rehabilitation goals, corrective actions required to meet those goals.

21. Defendant's failure to provide appropriate auxiliary aids or services to enable its Facility's Personnel to effectively communicate with Plaintiff created significant emotional problems for Plaintiff. Plaintiff experienced unnecessary anger, frustration, fear, and emotional distress due to his extremely limited ability to communicate with the Facility's Personnel about the financial arrangements for his stay, his health and well-being and rehabilitation.

## COUNT I
## VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973
## 29 U.S.C. § 704

22. Plaintiff incorporates by reference paragraphs 1 to 21 above.

23. Plaintiff bring this action under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794. Plaintiff was intentionally and deliberately denied full and equal enjoyment of Defendant's healthcare and rehabilitation services through Defendant's failure to comply with the Rehabilitation Act.

24. Defendant receives federal financial assistance in the form of reimbursement from federal Medicare and Medicaid programs and is therefore subject to the antidiscrimination provisions of the Rehabilitation Act, as described herein.

25. At all times relevant herein, Section 504, 29 U.S.C. §701 *et seq.*, and its implementing regulations, 45 C.F.R. § 84.4(a), were in full force and effect, which provide in pertinent part as follows:

- A. "No otherwise qualified individual with a disability...shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...." 29 U.S.C.§794(a);

- B. An individual with a disability is "otherwise qualified" to participate in covered programs and activities if that individual "meets the essential eligibility requirements for the receipt of such services." 45 C.F.R. § 84.3(l)(4);

- C. "Program or activity" means all of the operations of an entire corporation if assistance is extended to such corporation as a whole or the corporation is principally engaged in the business of providing health care services and any part of the corporation receives federal financial assistance. 29 U.S.C. §794(b)(3)(A)(i) and (ii); 45 C.F.R. §84.3(k)(3)(i)(A) and (ii);

- D. "Federal financial assistance" means "any grant, loan, contract...or any other arrangement by which the Department [of Health and Human Services] provides or otherwise makes available assistance in the form of... [f]unds." 45 C.F.R. §84.3(h);

- E. "No qualified handicapped person shall, because a recipient's facilities are inaccessible to or unusable by handicapped persons, be denied the benefits of, be excluded from participation in, or otherwise be subjected to discrimination under any program or activity to which this part applies." 45 C.F.R. §84.21; and

- F. "In providing health, welfare, or other social services or benefits, a recipient may not, on the basis of handicap: (1) Deny a qualified handicapped person these benefits or services... (3) Provide a qualified handicapped person with benefits or services that are not as effective as the benefits or services provided to others... (4)

>Provide benefits or services in a manner that limits or has the effect of limiting the participation of qualified handicapped persons." 45 C.F.R. § 84.52(a).

26. The Defendant's intentional and deliberate acts and omissions alleged herein violated Section 504 and its implementing regulations in one or more of the following respects:

  A. Defendant discriminated against Plaintiff by denying him the opportunity for the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations at its Facility;

  B. Defendant discriminated against Plaintiff by denying him the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of its Facility;

  C. Defendant discriminated against Plaintiff by offering or affording him services that are not equal to those services afforded to other individuals without hearing impairments;

  D. Defendant discriminated against Plaintiff by failing to make reasonable modifications in policies, practices, or procedures, which are necessary to afford its goods, services and facilities to Plaintiff where such modifications would not fundamentally alter the nature of the goods, services or facilities; and

  E. Defendant discriminated against Plaintiff by deliberately and intentionally failing to provide appropriate auxiliary aids and services, such as sign language interpreters, or other means to effectively communicate with Plaintiff, where the taking of such steps would not fundamentally alter the nature of its offered services or would not result in an undue burden, despite knowing the failure to do so would likely result in harm to the Plaintiff's federally protected right and failed to act upon that likelihood.

27. Section 505(a)(2) of the Rehabilitation Act, 29 U.S.C. §794(a)(2), states that the "remedies, procedures and that the rights set forth in Title VI of the Civil Rights Act of 1964 [42 U.S.C. §2000(d) *et seq.*] shall be available" for violations of

Section 504 of the Rehabilitation Act. By law, such remedies include compensatory monetary damages. *Barnes v. Gorman*, 536 U.S. 181 (2002).

28. Plaintiff is entitled to reasonable attorneys' fees and costs, pursuant to section 505(b) of the Rehabilitation Act, 29 U.S.C. §794(a), as Defendant's conduct has inflicted injury and damages upon Plaintiff, including loss of a civil right, mental anguish, humiliation and mental pain and suffering.

WHEREFORE, Plaintiff prays for the following relief against Defendant:

A. An award of compensatory monetary damages;

B. An award of reasonable attorneys' fees and costs; and,

C. Such other relief as the Court deems just.

## COUNT II
## Violation of Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116

29. Plaintiff incorporates by reference paragraphs 1 to 21.

30. Since March 2010, there was in full force and effect a statute known as the Patient Protection and Affordable Care Act (the "Affordable Care Act"), 42 U.S.C. § 18001, *et seq.,* Pub.L. 111-148. Section 1557 of the Affordable Care Act prohibits discrimination on the basis of race, color, national origin, sex, age, or disability in certain health programs and activities. 42 U.S.C. § 18116. Section 1557's implementing regulations, 45 C.F.R. §§ 92.1 – 92.203, effective as of July 18, 2016, apply to health programs or activities administered by recipients of Federal financial assistance from the U.S. Department of Health and Human Services.

31. As Defendant participates in Medicare and Medicaid, programs of the U.S. Department of Health and Human Services, it is a covered entity subject to compliance with Section 1557.

32. The implementing regulations of Section 1557, prohibit discrimination of an individual on the basis of disability, *inter alia*, and prohibit an individual from being excluded from participation in, denied the benefits of, or otherwise be subjected to discrimination under any health program or activity. *See* 45 C.F.R. § 92.101(a)(1). Those regulations, in pertinent part, require covered entities to:

A. Take appropriate initial and continuing steps to notify beneficiaries, enrollees, applicants and members of the public:

 (1) that the covered entity does not discriminate on the basis of race, color, national origin, sex, age, or disability in its healthcare programs or activities. 45 C.F.R. §92.8 (a)(1);

 (2) that the covered entity provides appropriate auxiliary aids and services, including qualified interpreters for individuals with disabilities and information in alternate formats, free of charge and in a timely manner, when such aids and services are necessary to ensure an equal opportunity to participate to individuals with disabilities. 45 C.F.R. §92.8 (a)(2);

 (3) how to obtain aids and services. 45 C.F.R. §92.8 (a)(4);

 (4) the identification of, and contact information for, the responsible employee designated to be responsible for adoption of grievance procedures. 45 C.F.R. §92.8 (a)(5);

 (5) the availability of grievance procedures and how to file a grievance pursuant to §92.7(b). 45 C.F.R. §92.8 (a)(6); and

 (6) how to file a discrimination complaint with the Department of Health and Human Services Office of Civil Rights. 45 C.F.R. §92.8 (a)(7).

B. That a covered entity shall take appropriate steps to ensure that communications with individuals with disabilities are as effective as communications with others in health programs and activities, in

12

> accordance with the standards found at 28 C.F.R. §§ 35.160 through 35.164. 45 C.F.R. § 92.202(a).

28 C.F.R. §§ 35.160 through 35.164 are the communication access standards required of public entities under Title II of the Americans with Disabilities Act. Where those regulatory provisions use the term "public entity," the term "covered entity" shall apply in its place. *See* 45 C.F.R. § 92.202(a). As applied to Section 1557 covered entities, the Title II regulations require them to "take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others." 28 C.F.R. § 35.160(a)(1). In addition, a covered entity "shall furnish appropriate auxiliary aids and services where necessary to afford qualified individuals with disabilities, … companions, … an equal opportunity to participate in, and enjoy the benefits of, a service, program or activity of a [covered] entity," 28 C.F.R. § 35.160(b)(1); and "[i]n determining what types of auxiliary aids and services are necessary, a [covered] entity shall give *primary consideration* to the requests of individuals with disabilities …." 28 C.F.R. § 35.160(b)(2) (emphasis added).

33. Throughout Plaintiff's admission to Defendant's Facility, Defendant had a duty under Section 1557 to give primary consideration to Plaintiff's communication preference and provide him with an ASL interpreter, either on-site or via VRI. And, it did not.

34. Defendant's acts and omissions violated Section 1557 and its implementing regulations as Defendant did not take appropriate steps to ensure that communications with Plaintiff were as effective as communications with others in its healthcare and rehabilitation programs and activities, and Defendant failed to give any

consideration, primary or otherwise, to Plaintiff's communication preferences, as Defendant was legally required to do under Section 1557 and the standards found at 28 C.F.R. §§ 35.160 through 35.164. 45 C.F.R. § 92.202(a).

35. Section 1557's implementing regulations provide that the enforcement mechanisms available for and provided under Title VI of the Civil Rights Act of 1964, Section 504 of the Rehabilitation Act, *inter alia*, shall be available for purposes of Section 1557 as implemented by this part, and "compensatory damages for violations of Section 1557 are available in appropriate administrative and judicial actions brought under this rule." *See* 45 C.F.R. § 92.301.

36. Defendant's conduct constituted violations of Section 1557.

37. Section 505(a)(2) of the Rehabilitation Act, 29 U.S.C. § 794(a)(2), states that the "remedies, procedures and that the rights set forth in title VI of the Civil Rights Act of 1964 [being 42 U.S.C. § 2000(d) *et sequitur*] shall be available" for violations of Section 504 of the Rehabilitation Act. By law, such remedies include compensatory monetary damages. *Barnes v. Gorman*, 536 U.S. 181 (2002).

38. Plaintiff is entitled to reasonable attorneys' fees and costs, pursuant to Section 505(b) of the Rehabilitation Act, 29 U.S.C. § 794a.

WHEREFORE, Plaintiff prays for the following relief:

A. An award of compensatory monetary damages;

B. An award of attorneys' fees and costs; and

C. Such other relief as the Court deems just.

## COUNT III
## NEGLIGENCE

39. Plaintiff incorporates by reference paragraphs 1 to 21 above.

40. From the time the Facility admitted Plaintiff as a resident on April 29, 2017, Defendant knew the Plaintiff was severely hard of hearing and Defendant identified him as "deaf" in the electronic medical records developed for the Plaintiff at the Facility. Defendant knew Plaintiff would require auxiliary aids and services to communicate effectively, particularly during Vital Encounters.

41. Defendant had a duty to provide skilled nursing care and rehabilitation services to the Plaintiff in a manner to avoid mental anguish or emotional distress.

42. The absence of appropriate auxiliary aids and services caused or contributed to cause Defendant's fall in the shower and the significant delay to obtain appropriate dental care services.

43. The Illinois Nursing Home Care Act, 210 ILCS 45/1-101 *et seq.*, establishes a standard of care that required Defendant to provide its services and permit Plaintiff to participate in its services in a language that Plaintiff understands.

44. Defendant breached its duty of care to Plaintiff, either carelessly or intentionally, in one or more of the following ways:

> A. Denied Plaintiff the opportunity for the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of its Facility;
>
> B. Denied Plaintiff the opportunity to participate in his care, care planning process, his rehabilitation given the absence of auxiliary aids and services to permit Plaintiff to communicate effectively;

15

C. Knowingly failed to implement adequate practices or procedures necessary to afford Plaintiff an equal opportunity to participate in its goods, services and facilities to Plaintiff; and

D. Failed to provide appropriate auxiliary aids, sign language interpreters, or other means to effectively communicate with deaf and hard of hearing residents, resulting in a negligent or willful neglect of adequate care and resulting in prolonged pain and mental anguish to Plaintiff, 210 ILCS 45/1-117.

45. Despite knowledge of the Plaintiff's hearing disability, Defendant knowingly and intentionally failed and refused to ensure that appropriate auxiliary aids or services were provided to Plaintiff to achieve effective communication.

46. The harm suffered by Plaintiff was a direct and proximate result of the Defendant's failure to meet their duties of care owed to Plaintiff, and the standard of care applicable to nursing homes under the Nursing Home Act, Section 504, and Section 1557 among other standards of care.

WHEREFORE, Plaintiff prays for the following relief against Defendant:

A. An award of compensatory monetary damages;

B. An award of reasonable attorneys' fees and costs; and,

C. Such other relief as the Court deems just.

## COUNT IV
## VIOLATION OF THE ILLINOIS NURSING HOME CARE ACT & SKILLED NURSING AND INTERMEDIATE CARE FACILITIES CODE
## 210 ILCS 45/1-101, *ET SEQ*; 77 IL. ADMIN CODE 300.110 *ET SEQ.*

47. Plaintiff incorporate by reference paragraphs 1 to 21 above.

48. Plaintiff brings this action under the Illinois Nursing Home Care Act (the "Act"), 210 ILCS 45/1-101, *et seq.*, and its implementing regulations, Ill. Admin Code tit. 77, pt. 300, which existed at all relevant times herein.

49. Plaintiff's private right of action against Defendant, a skilled nursing and intermediate care facility, licensed in the state of Illinois, arises under 77 Ill. Admin. Code, Section 300.3290(a).

50. Section 300.3290(d) of Title 77 permits court actions under the Act for both injunctive and declaratory relief. Section 3-603 of the Act.

51. Section 300.3290(e) of Title 77 allows recovery of damages against the nursing home facility, "in addition to and cumulative with any other legal remedies available to a resident" without exhaustion of administrative remedies. Section 3-604 of the Act.

52. Section 300.3290(c) provides that the licensee shall pay three times the actual damages or $500, whichever is greater, and costs and attorneys' fees to a facility resident whose rights as specified in Part 1 of Article II of the Act are violated. Section 3-602 of the Act.

53. Defendant violated the Act, and its duty to Plaintiff in several respects, among other actions, including but not limited to those duties specified under the Act as follows:

   A. Failed to develop or implement a Comprehensive Resident Care Plan to adequately communicate with the "active participation" of the Plaintiff concerning his needs, as required by Section 3-202a;

   B. Failed to provide a care plan that would attain or maintain the highest practicable level of independent functioning, as required by Section 3-202a-b;

   C. Failed to provide the necessary care to prevent diminution of the resident's abilities in activities of daily living, including hygiene, nutrition, rooming, ambulation and functional communication systems, as required by Section 3-202b(4)-(5), 3-202d(3)-(4).

54. As a result of Defendant's acts and or omissions, Plaintiff suffered the following damages:

    A. Mental anguish and emotional distress due to the Plaintiff's inability to communicate with the Facility's Personnel;

    B. Lack of adequate medical and dental care, lack of informed consent and lack of participation in his healthcare and rehabilitation causing prolonged pain and suffering, additional stress, frustration and adding to his depression; and

    C. Plaintiff's loss of association, inability to participate in social services, activities and programs at the Facility;

55. The harm suffered by Plaintiff was a direct and proximate result of the Defendant's failure to meet its duties of care owed to Plaintiff under the standard of care required of skilled nursing and intermediate care facilities under the Act and the Illinois Administrative Code, in addition to other applicable standards of care.

WHEREFORE, Plaintiff prays for the following relief against Defendant:

    A. An award of compensatory monetary damages;

    B. An award of reasonable attorneys' fees and costs; and,

    C. Such other relief as the Court deems just.

**Plaintiffs Demand Trial by Jury**

Dated:  January 2, 2018                                KURT MILES, Plaintiff.


                                                       /s/ Jennifer M. Sender
                                                       _____
                                                       One of His Attorneys


Jennifer M. Sender (ARDC No. 6207774)
Andrés J. Gallegos (ARDC No. 6212168)
Attorneys for Plaintiff
ROBBINS, SALOMON & PATT, LTD.
180 N. LaSalle, Suite 3300
Chicago, Illinois 60601
(312) 782-9000 - Telephone
(312) 782-6690 - Facsimile
jsender@rsplaw.com
agallegos@rsplaw.com